2016 PA Super 164

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL WITMAYER, | |
| Appellant | No. 1560 EDA 2015 |

Appeal from the Judgment of Sentence May 4, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004935-2013

BEFORE:  BOWES, MUNDY AND PLATT,* JJ.

OPINION BY BOWES, J.:                                    **FILED JULY 22, 2016**

Michael Witmayer appeals from the judgment of sentence of five and one-half to twenty years imprisonment that was imposed after he was convicted at a jury trial of involuntary deviate sexual intercourse with a child less than sixteen years of age ("IDSI"), indecent assault of a person less than sixteen years of age, corruption of a minor, and endangering the welfare of a child.  We affirm.

Appellant's convictions stemmed from his pattern of sexual abuse of C.M. that occurred when C.M. was eight to fourteen years old in both Chester County and Montgomery County.  Appellant, who was a father-figure to the victim, masturbated the victim, performed oral sex on him, and had C.M. perform oral sex on Appellant.  In May 2010, C.M., who was twelve years old at the time, made allegations of sexual abuse against

* Retired Senior Judge assigned to the Superior Court.

Appellant regarding events that transpired in Chester County.   Detective Timothy Prouty of the North Coventry Police Department investigated the allegations, and, on June 3, 2010, Appellant met with Detective Prouty at the police station.   When Appellant arrived, he was taken to the interview room, and Detective Prouty told him specifically that he was not under arrest and that he was free to leave at any time.   Appellant was provided with directions for exiting the station.

Shortly thereafter, Detective Prouty and a colleague began to discuss the sexual abuse allegations.  The victim had told Detective Prouty about an incident that occurred when he and Appellant were in a car alone riding from a Wal-Mart located in Morgantown and headed towards a mall known as Coventry Mall.  C.M. said that, while they were on a side road, Appellant told C.M. that he may be gay and convinced C.M. to remove his pants and underwear and touch his own penis.  After C.M. complied, Appellant asked to touch C.M.'s penis.   C.M. initially consented, but changed his mind and pushed away Appellant's hand.

When asked about this allegation, Appellant admitted that he had been with the victim at the Wal-Mart in Morgantown and that, when they left, they headed toward Coventry Mall alone in Appellant's car.   Appellant acknowledged that they took a side road during the journey.   Appellant represented that C.M., not Appellant, had said that he might be gay and that C.M. had voluntarily lowered his pants and underwear, and began to touch

- 2 -

his own penis. Appellant also claimed that C.M. asked Appellant to touch C.M.'s penis, but Appellant refused, telling C.M. that they could not engage in sexual contact until C.M. was eighteen years old.

Ultimately, the Chester County District Attorney's Office did not press criminal charges against Appellant. In 2012, C.M. alerted authorities of new incidents of sexual abuse perpetrated by Appellant in various locations throughout Chester and Montgomery Counties. Montgomery County authorities thereafter launched an investigation into all reported instances of sexual abuse. During the investigation, Pottstown Police completed a telephone intercept, with C.M.'s consent, of two conversations between Appellant and the victim. In one, the victim and Appellant spoke about their friendship, and, in the other, Appellant denied engaging in inappropriate sexual contact with C.M.'s brother. The following business day, police furnished the recording of the intercept to the Montgomery District Attorney's Office, where it remained in a safe until trial.

On June 10, 2013, this criminal action was instituted in Montgomery County wherein Appellant was accused of committing a multitude of crimes concerning the sexual abuse occurring from 2006 to 2012. The charges encompassed crimes committed in both counties in question. Criminal Complaint, 6/10/13.

On June 13, 2014, the Commonwealth moved to amend the information to include the phrase "County of Chester," which it maintained

was mistakenly absent from the original information. N.T. Trial, 6/17/14, at 9. On June 17, 2014, the trial judge heard pre-trial arguments from both parties on the issue and granted the Commonwealth's motion to amend. *Id*. at 3-12. The judge found that the crimes that transpired in Chester County were part of the same criminal episode which initially occurred in Montgomery County, and further, that Appellant had been on notice of all of the charges. The trial judge also denied Appellant's motion to suppress his June 3, 2010 statement to Detective Prouty.

On June 19, 2014, a jury found Appellant guilty of IDSI, indecent assault of a person less than sixteen years of age, corruption of minors, and endangering the welfare of a child. On May 4, 2015, the trial court sentenced Appellant to an aggregate term of five and one-half to twenty years imprisonment. No mandatory minimum sentence was applied. This timely appeal followed. On June 16, 2015, Appellant filed his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and on July 7, 2015, the trial court issued its corresponding opinion. This matter is now ready for review. Appellant raises these allegations.[1]

---

[1] We note that Appellant's brief is forty-six pages in length and does not contain the certification required by Pa.R.A.P. 2135. Pa.R.A.P. 2135(a)(1) ("A principal brief shall not exceed 7,000 words, except as stated in subparagraphs (a)(2)-(4) [involving cross appeals and capital cases]. A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages or the reply brief is longer than 15
*(Footnote Continued Next Page)*

1. The sentence levied on the charge of involuntary deviate sexual intercourse is illegal because the element "the complainant and person are not married to each other" was missed. The record is silent on the element.

2. The [t]rial [c]ourt abused its discretion when it allowed the Commonwealth to pursue alleged criminal conduct in Chester County that had been thoroughly investigated by Chester County detectives and passed on by the District Attorney of Chester County.

3. The [t]rial [c]ourt abused its discretion when it failed to suppress the [Appellant's] statement given to Detective Timothy Prouty of the North Coventry Township Police Department on June 3, 2010. The Detective's invitation to the police station for no stated purpose devolved into a custodial interrogation inside a police station interrogation room without the benefit of *Miranda*.

4. The [t]rial [c]ourt abused its discretion when it failed to suppress wiretap results that were unauthenticated by former county detective Mary Anders who had been fired due to her reckless disregard for the truth in another criminal investigation that resulted in civil rights litigation.

5. The [t]rial [c]ourt abused its discretion when it failed to suppress wiretap results that were seized in violation of enabling legislation.

Appellant's brief at 7-8 (internal citations omitted) (italics omitted) (re-numbered for ease of disposition).

Appellant's first averment purports to be a challenge to the legality of his sentence. However, his actual averment is that there was no proof

*(Footnote Continued)* ——————————

pages when prepared on a word processor or typewriter.") As we conclude that this single deviation from the rules applicable to briefs does not impede our review, we will overlook it. *Cf. Commonwealth v. Spuck*, 86 A.3d 870 (Pa.Super. 2014).

adduced at trial that he was not married to C.M. Thus, his challenge relates to a missing element of crime of IDSI. Specifically, Appellant was convicted under 18 Pa.C.S. § 3123(a)(7), which states: "A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant . . . . who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other." 18 Pa.S.C. § 3123(a)(7). In his first claim on appeal, Appellant avers that there was no proof that he was not married to C.M. and suggests that the sentence imposed thereon is illegal.

We conclude that Appellant's allegation does not pertain to the legality of his sentence. He does not suggest that his sentence exceeded the mandatory minimum, should have been merged with another offense, or was imposed under an infirm mandatory minimum sentencing provision. He, instead, is asserting that an element of the crime in question was not proven. A position that the Commonwealth failed to prove all elements of a crime is obviously a challenge to the sufficiency of the evidence supporting a conviction and not to the legality of the sentence imposed upon that conviction. However, Appellant did not raise an objection to the sufficiency of the evidence supporting his IDSI conviction in his Pa.R.A.P. 1925(b) statement. Hence, his first claim is waived. ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived."); ***Commonwealth v. Tyack***, 128 A.3d

254 (Pa.Super. 2015). Despite Appellant's attempt to circumvent waiver by reframing his first averment as pertaining to the legality of his sentence, we reject this ploy.

In his second issue on appeal, Appellant contends that the trial court abused its discretion when it allowed the Commonwealth to prosecute in this Montgomery-County action the conduct that transpired in Chester County. We have reviewed Appellant's argument and, despite experiencing some difficulty in discerning the precise nature of his complaint, we have concluded that Appellant is challenging two determinations in connection with this second position: 1) the trial court's ruling that Montgomery County was the appropriate venue for prosecuting the sexual abuse that occurred in both Montgomery and Chester Counties, and 2) the trial court's grant of the Commonwealth's motion to amend the information to include the phrase, "County of Chester." *See* Appellant's brief at 24-29.

We address the venue position first and employ this standard of review:

> Venue merely concerns the judicial district in which the prosecution is to be conducted; it is not an essential element of the crime, nor does it relate to guilt or innocence. Because venue is not part of a crime, it need not be proven beyond a reasonable doubt as essential elements must be. Accordingly, applying the preponderance-of-the-evidence standard to venue challenges allows trial courts to speedily resolve this threshold issue without infringing on the accused's constitutional rights. Like essential elements of a crime, venue need not be proven by direct evidence but may be inferred by circumstantial evidence. Appellate review of venue challenges, similar to that applicable

to other pre-trial motions, should turn on whether the trial court's factual findings are supported by the record and its conclusions of law are free of legal error.

*Commonwealth v. Gross*, 101 A.3d 28, 33-34 (Pa. 2014) (citations omitted).

Appellant argues that the trial court incorrectly viewed the various crimes as the same criminal episode under Pa.R.Crim.P. 130. Appellant proclaims that the "the criminal acts alleged have no connection but for the same victim and defendant." Appellant's brief at 26. Appellant also maintains that there was a significant gap of sixteen months between the 2010 Chester County allegations and the ones leveled in 2012. *Id*. Pa.R.Crim.P. 130 provides in pertinent part:

> (A) Venue. All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred . . . subject, however, to the following exceptions:

> (3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

Pa.R.Crim.P 130(A)(3). This Court "has held that a condition precedent to the exercise by a single county to jurisdiction in a case involving multiple offenses in various counties is: the offense must constitute a single criminal episode." *Commonwealth v. Kohler*, 811 A.2d 1046, 1049 (Pa.Super. 2002) (citations omitted). If "a number of charges are logically or

temporally related and share common issues of law and fact, a single criminal episode exists." *Id*. at 1050 (citation omitted). When we ascertain

> whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'
>
> The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are immediately connected in time. 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Id*. at 1050-51.

Our review of the record reveals that the crimes in question were logically and temporally related. The proof adduced at trial was that Appellant groomed the victim as a young child, corrupted his morals as a young teenager, and continued to seek sexual contact with him as he aged. Appellant engaged in a continuing course of sexual molestation, and the 2012 allegations included incidents occurring at various locations in both Chester County and Montgomery County. Based on the foregoing we conclude that the trial court's finding is supported by the record and that the court did not commit legal error in concluding the offenses charged in this action were part of the same criminal episode.

Appellant also contends that the trial court's grant of the Commonwealth's motion to amend the information on the day of trial unfairly prejudiced him and violated Pa.R.Crim.P. 564. That rule provides:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

A defendant will be afforded relief when the trial court exercises its discretionary power to allow amendment of the information only if the defendant was prejudiced by the amendment. ***Commonwealth v. Veon***, 109 A.3d 754, 768 (Pa. 2015). Factors for a court to consider in determining the existence of prejudice include:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Id***.

Appellant avers that "additional and different offenses were undoubtedly added and prejudiced" him. Appellant's brief at 27 (emphasis removed). He continues that the amendment caused prejudice because it,

- 10 -

*inter alia*, added new facts, was deceptive, and unfairly harmed the defense strategy. Appellant's brief at 29. These assertions are without merit. The amendment merely added the phrase, "County of Chester," to the information. It did not add any new facts or charges of which Appellant was previously unaware. Both the criminal complaint and affidavit of probable cause detailed acts of abuse occurring in both Chester County and Montgomery County. Thus, the trial court agreed with the Commonwealth that the missing phrase was merely a defect in form. The fact that Appellant leveled pretrial attacks on the prosecution of the charges committed in Chester County is a clear indication that he was both aware of and preparing a defense against those charges. Accordingly, we find no prejudice as a result of the amendment to the information, and therefore, the trial court did not err or abuse its discretion in permitting it.

In his third issue, Appellant claims that his statement to Detective Prouty in June of 2010 should have been suppressed. Appellant suggests that he reasonably believed he was in police custody, and was therefore legally entitled to **Miranda** warnings. Appellant's brief at 33-35.

When reviewing the denial of a defendant's suppression motion, we are subject to the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth

- 11 -

> prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted).

Our law is well settled that an individual is entitled to *Miranda* warnings only when he is subject to a custodial interrogation. *See Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015). An individual is considered to be in custody when "he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Id*. (quoting *Commonwealth v. Johnson*, 727 A.2d 1089, 1100 (Pa. 1999)). The determination of whether a person is in custody is an objective one and based upon the reasonable belief conveyed to the person being questioned, with attention on the totality of the circumstances. *Id*.

> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring *Miranda* warnings.

- 12 -

*Commonweath v. Baker*, 963 A.2d 495, 501 (Pa.Super. 2008) (citation omitted).

Appellant professes that his meeting with Detective Prouty amounted to a seizure because a reasonable man would not have felt free to leave upon learning of the allegations against him. Appellant's brief at 35. Appellant relies on this Court's holding in *Commonwealth v. Dewar*, 674 A.2d 714 (Pa.Super. 1996), wherein the defendant was found to be subject to a custodial interrogation. *Id*. at 717. However, that case is distinguishable from the case *sub judice*. In *Dewar*, the Commonwealth had appealed the trial court's suppression of statements that the defendant provided to police, and this Court refused to overturn the trial court's findings due to a lack of evidence regarding the circumstances of the interrogation. Thus, we were unable to discern if the court erred in concluding that the defendant was in custody. *Id*. at 717 ("No evidence was offered as to the length of detention or whether appellee's freedom of movement was restricted. Under the circumstances, given the evidence presented, we cannot find that the trial court erred in concluding that appellee was in 'custody' during the police interrogation.").

The Commonwealth in the present case offered ample evidence to support the trial court's legal conclusion that Appellant was not subject to a custodial interrogation. Appellant voluntarily agreed to meet with Detective Prouty at the police station. The Detective informed Appellant he was not

under arrest and that he was free to leave at any time. Appellant was given directions for exiting the station. A casual interview ensued and it was not unduly long. At no point did Appellant exhibit signs of misunderstanding or incapacity. These circumstances sufficiently support the trial court's holding that a reasonable man would not have believed he was in police custody. *Baker*, *supra*. Thus, Appellant's third claim fails.

Appellant's fourth and fifth issues pertain to the consensual recordings of the telephone intercept utilized by the Commonwealth at trial. He attacks their admission on two bases. First, he claims the recordings were unauthenticated since the detective who originally obtained them did not testify at trial. He also avers that, since the district attorney did not have possession of the recordings for a short period, they were obtained in violation of the Wiretap Act, which permits consensual phone intercepts and mandates that the recordings of such intercepts be in the custody of the district attorney. *See* 18 Pa.C.S. § 5704(2)(ii).[2] Both of these contentions implicate the admissibility of the recordings.

_____

[2] That section states:

> (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county

*(Footnote Continued Next Page)*

The standard of review for challenges to the admissibility of evidence is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015) (citations and quotation marks omitted).

Regarding authentication, several principles apply. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Critically, "Physical evidence may be properly admitted despite gaps in testimony regarding

*(Footnote Continued)* —————————

> wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom[.]

18 Pa.C.S. § 5704(2)(ii). We note that our Wiretap Act is preempted by the Federal Wiretap Act in circumstances not involved herein. *Bansal v. Russ*, 513 F. Supp.2d 264 (E.D.Pa. 2007).

- 15 -

custody." ***Commonwealth v. Feliciano***, 67 A.3d 19, 29 (Pa.Super. 2013). Furthermore, any issue regarding gaps in the chain of custody relate to the weight of the evidence, not its admissibility. ***Id***.

Appellant's contentions are that the absence of the detective who conducted the phone intercept rendered the recordings of the consensual phone intercept unauthenticated and that the district attorney failed to keep the recordings in his custody as required by the Wiretap Act, 18 Pa.C.S. § 5704(2)(ii), are wholly without merit. The evidence adduced at trial was more than sufficient to establish the authenticity of the tape recordings. C.M., his mother, a detective, and two assistant district attorneys all testified as to the authenticity of the recordings. There is no requirement that the prosecution must present, as a witness, every individual involved with the evidence sought to be presented. ***Feliciano***, ***supra*** at 29.

Additionally, Assistant District Attorney Kevin Steele testified that the phone interception took place on December 28, 2012, a Friday, and the recordings were received by the District Attorney's Office on December 31, 2012, the following Monday. Thereafter, they remained in a safe at the district attorney's office. As the trial court correctly noted, "[t]he gap in the chain of custody was brought out by both the Commonwealth and by defense counsel on cross-examination, therefore, it was for the jury to determine the weight to be given to the evidence despite the gap in the chain of custody." Trial Court Opinion, 7/7/15, at 8. Accordingly, the trial

- 16 -

court did not abuse its discretion when it allowed the recordings to be admitted into evidence, nor did it abuse its discretion when it denied Appellant's motion to prevent introduction of the recordings. For the foregoing reasons, Appellant's fourth and fifth claims fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2016