J-S21032-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KERRIE LEI GUIRLEO, | : | |
| | : | |
| Appellant | : | No. 1334 WDA 2016 |

Appeal from the Judgment of Sentence August 31, 2016
in the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001292-2015

BEFORE:    LAZARUS, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED JUNE 16, 2017**

Kerrie Lei Guirleo (Appellant) appeals from the judgment of sentence imposed on August 31, 2016, after she was found guilty of one count of persons not to possess firearms.  We affirm.

The trial court set forth the factual history as follows.

> On July 15, 2015, Trooper David Vinkler of the Pennsylvania State Police was dispatched to Iris Street in Connellsville, Fayette County, Pennsylvania for a matter unrelated to this case.  As part of police protocol, Trooper Vinkler attempted to interview residents of the neighborhood.  It was through this process that Trooper Vinkler came into contact with Appellant.  Adjacent to the residence that Trooper Vinkler was dispatched to was Appellant's residence, at 435 Iris Street.
>
> As Trooper Vinkler approached Appellant's residence, Appellant was standing in the entranceway of her open door. Appellant invited Trooper Vinkler inside after he asked if he could talk to her.[2]  Once Trooper Vinkler entered the residence, he noticed a 410 shotgun laying across the arms of a recliner chair situated in the living room.  Determining the shotgun to be

_____

*Retired Senior Judge assigned to the Superior Court.

unloaded, Trooper Vinkler removed the firearm from the residence and placed it outside of the main entrance door.

Trooper Vinkler then located additional firearms in a locked gun case in a bedroom and a loaded [.]44 Caliber Ruger Pistol ("Ruger") underneath a pillow on the couch in the living room. After locating the firearms, Trooper Vinkler escorted Appellant outside the house towards his patrol vehicle where he locked the Ruger in his trunk. With regards to the other firearms, Trooper Vinkler contacted a relative of Appellant to take possession and remove them from the house. Trooper Vinkler concluded his investigation by placing Appellant under arrest when he confirmed she was not permitted to possess a firearm.[3]

Appellant testified at trial. Appellant testified that she lived with her husband and son. She testified that she did not know any guns were in the gun cabinets and she did not know that the Ruger was under a pillow in the living room. She later testified that the Ruger was her mother's firearm, who was at the residence earlier that day.

_____

[2] Appellant testified that Trooper Vinkler just walked into her house but she did not tell him he could not come inside.

[3] This [c]ourt read to the jury a stipulation agreed to by the parties that Appellant was prohibited from possessing or controlling a firearm due to a prior conviction and she was prohibited from possessing or controlling a firearm on a date more than sixty days from July 15, 2015.

Trial Court Opinion, 10/4/2016, at 2-3 (record citations omitted).

After being charged with the aforementioned crime, Appellant filed an omnibus pre-trial motion to suppress the evidence. Specifically, Appellant argued, *inter alia*, that Trooper Vinkler, the arresting officer, (1) entered her home without a search warrant or probable cause; (2) lacked reasonable suspicion and probable cause to search her residence; and (3) obtained

statements from Appellant without reading her ***Miranda***[1] warnings. The

suppression court held a hearing at which testimony from Trooper Vinkler

was presented. Appellant was not present at the hearing.[2] The suppression

court made the following findings of fact on the record at the hearing.

> [O]n July 15, 2015, Trooper Vinkler was investigating a burglary that had been reported at the home of [Appellant's mother,] Helen Newcomer[,] who resides at 433 Irish Street in Connellsville, Fayette County, Pennsylvania. In the course of his investigation he proceeded [next door] to 435 Irish Street in Connellsville which is the residence of [Appellant.] [Appellant] permitted Trooper Vinkler into her home and for his safety he made inquiry as to whether there were any firearms in the immediate area after first noticing a 410 shotgun across the arm of a chair. The trooper properly asked, to protect his own safety upon seeing the shotgun, if there were other weapons in the immediate area and it was then that [Appellant] reported that she had a loaded [.]44 [caliber firearm] under a pillow on her couch, which the trooper then removed from the immediate area. [Appellant] acknowledged that the guns were registered to her and Trooper Vinkler determined that she is not entitled to possess firearms in that she pled guilty to a felony offense which occurred in April of 1998.

N.T., 11/17/2015, at 15-16. Following the hearing, the suppression court

denied Appellant's motion. Order, 11/18/2015.

A jury trial was held on August 1, 2016, and Appellant was found

guilty of the aforementioned charge. On August 31, 2016, Appellant was

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] Appellant's whereabouts were unknown at the time of the hearing, but her counsel agreed to proceed because counsel did not plan to present testimony from Appellant. N.T., 11/17/2015, at 3.

sentenced to three and a half to seven years of incarceration. Appellant timely filed a notice of appeal.[3]

On appeal, Appellant raises two issues.

[1] Did the [suppression] court err in denying Appellant's omnibus pretrial motion to suppress evidence?

[2] Did the trial court err in permitting the Commonwealth to introduce testimony regarding multiple "firearms" where the Commonwealth information charged Appellant with being in possession of a single "firearm"?

Appellant's Brief at 7.

We consider the following regarding Appellant's first issue.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

---

[3] Appellant filed a statement pursuant to Pa.R.A.P. 1925 challenging the suppression's court ruling as well as an evidentiary ruling made at trial. The trial court filed a Rule 1925(a) opinion addressing the evidentiary issue. However, we note that while the suppression court stated its factual findings on the record at the suppression hearing prior to issuing its ruling and made a passing reference to officer safety, it did not issue specific "conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute," as is required by Pa.R.Crim.P. 581(I).

***Commonwealth v. Prisk***, 13 A.3d 526, 530 (Pa. Super. 2011) (quoting ***Commonwealth v. Williams***, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*)).

Appellant argues that because Trooper Vinkler had neither a search warrant nor probable cause to enter her home, any testimony regarding firearms recovered from the home should have been suppressed. Appellant's Brief at 11-12. She further argues that Trooper Vinkler questioned her and obtained incriminating statements without administering required ***Miranda*** warnings. ***Id.*** at 10-11.

Appellant's argument in her brief regarding Trooper Vinkler's entry into her home is cursory, underdeveloped, and lacks citation to pertinent case law.[4] It is an appellant's duty to present arguments that are sufficiently developed for our review. ***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010). This Court will not act as counsel and develop arguments on behalf of an appellant. ***Id.*** Therefore, Appellant has waived this issue.

Even if Appellant had not waived this issue, it would have no merit. While the Fourth Amendment generally prohibits the warrantless entry of a person's home, the prohibition does not apply to situations in which voluntary consent has been obtained. ***Illinois v. Rodriguez***, 497 U.S. 177,

---

[4] We also note with disapproval that Appellant's statement of the case fails to include "[a] closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found." Pa.R.A.P. 2117(a)(4).

- 5 -

181 (1990). Based upon Trooper Vinkler's testimony that Appellant invited him into her home, the suppression court found that Trooper Vinkler entered Appellant's home with her permission. N.T., 11/17/2015, at 7, 15-16.

Similar to her argument regarding entry into the home, Appellant's argument concerning the lack of *Miranda* warnings is also underdeveloped. Other than noting that she was a suspect in a burglary investigation, she fails to describe why she was entitled to the warnings. While Appellant cites to general case law regarding *Miranda* warnings, she fails to analyze the issue by applying the facts of her case to the law. Therefore, she has waived this issue as well.

Again, however, even if Appellant had not waived this issue, it would merit no relief. *Miranda* safeguards only attach once a person is in custody and subjected to "express questioning or its functional equivalent." ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa. Super. 2008). To constitute an interrogation, the words or actions of the police must be "reasonably likely to elicit an incriminating response from the suspect." ***Id.*** "[I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances." ***Id.***

> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [his or her] freedom of action in any significant way or is placed in a situation in which [he or she] reasonably believes that [his or her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the

individual being interrogated reasonably believes [his or her] freedom of action is being restricted.

Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* at 30-31 (citations and quotations omitted).

Here, at the time Appellant made statements regarding the presence and ownership of guns in her home, she was not in custody, even if Trooper Vinkler's burglary investigation focused upon Appellant.[5] "The fact that a police investigation has focused on a particular individual does not automatically trigger 'custody,' thus requiring *Miranda* warnings." *Commonealth v. Witmayer*, 144 A.3d 939, 948 (Pa. Super. 2016). Appellant could not have reasonably believed that her freedom of action was restricted. As noted above, Appellant invited Trooper Vinkler into her home. Trooper Vinkler noticed a shotgun in plain sight upon entering the residence. N.T., 11/17/2015, at 7-8. He asked Appellant's permission to place the gun outside, which she granted. *Id.* All of Trooper Vinkler's questioning regarding firearms occurred in the immediate aftermath of his entry into the

---

[5] Appellant's mother, who lived next door to Appellant, alleged that Appellant had kicked in the back door of her residence and stolen all of her food. Appellant was charged with burglary but the charge was dismissed at the magistrate's level. N.T., 11/17/2015, at 5-6, 10.

home, so their interaction was not of a long duration. There are no indications that Trooper Vinkler showed, threatened or used force.

Appellant's remaining claim of error is that the trial court should have prohibited the Commonwealth from introducing testimony regarding multiple firearms at trial because the criminal information referenced "a firearm." Upon our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Joseph M. George, Jr. thoroughly and correctly addresses and disposes of that issue and supporting arguments and evidences no abuse of discretion or errors of law. *See* Trial Court Opinion, 10/3/2016, at 3-6. We agree with the trial court's analysis that the information tracked the wording of the statute and Appellant's argument would require reading the information in an overly technical manner. *Id.* at 4-5. Moreover, Appellant had ample notice of the testimony regarding multiple firearms due to Trooper Vinkler's testimony at the suppression hearing. *Id.* at 5-6.

Accordingly, we adopt the trial court's opinion, filed on October 3, 2016, as our own and hold, based upon the reasons stated therein, that the trial court committed neither an error of law nor an abuse of discretion in allowing the Commonwealth to present evidence of multiple firearms. The parties shall attach a copy of the trial court's October 3, 2016 opinion to this memorandum in the event of future proceedings.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/16/2017

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY,
PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,  : CRIMINAL ACTION

v.                              :

KERRIE LEI GUIRLEO,            : NO. 1292 OF 2015

        Appellant.           :

_____ : JUDGE JOSEPH M. GEORGE, JR.

**ATTORNEYS AND LAW FIRMS**

James J. Geibig, Esquire, Assistant District Attorney, *For the Commonwealth*

David W. Kaiser, Esquire, Assistant Public Defender, *For the Appellant*

# OPINION

GEORGE, J.                                         October 3, 2016

Following a trial by jury, Appellant, Kerrie Lei Guirleo, was convicted on one

(1) count of Persons Not to Possess Firearms.[1]  On August 31, 2016, Appellant was

sentenced to a term of imprisonment of not less than three and one-half (3½) years

nor more than seven (7) years.  Appellant filed a direct appeal to the Superior Court

of Pennsylvania.  This Opinion is in support of the verdict of the jury.

## CONCISE ISSUES

Appellant filed the following Statement of Errors Complained of on Appeal:

1. Did the trial court err in denying Appellant's Omnibus Pretrial Motion
   ("OPT") to suppress evidence?

_____

[1] 18 Pa. C.S. § 6105(a)(1).

1

2. Did the trial court err in permitting the Commonwealth to introduce testimony regarding multiple "firearms" where the Commonwealth information charged Appellant with being in possession of a singular "firearm."

## FACTS

On July 15, 2015, Trooper David Vinkler of the Pennsylvania State Police was dispatched to Iris Street in Connellsville, Fayette County, Pennsylvania for a matter unrelated to this case. (T.T. p. 13). As part of police protocol, Trooper Vinkler attempted to interview residents of the neighborhood. (T.T. p. 13). It was through this process that Trooper Vinkler came into contact with Appellant. (T.T. p. 13). Adjacent to the residence that Trooper Vinkler was dispatched to was Appellant's residence, at 435 Iris Street. (T.T. pp. 13, 31).

As Trooper Vinkler approached Appellant's residence, Appellant was standing in the entranceway of her open door. (T.T. pp. 14, 33). Appellant invited Trooper Vinkler inside after he asked if he could talk to her. (T.T. pp. 14, 26).[2] Once Trooper Vinkler entered the residence, he noticed a 410 shotgun laying across the arms of a recliner chair situated in the living room. (T.T. pp. 15, 35). Determining the shotgun to be unloaded, Trooper Vinkler removed the firearm from the residence and placed it outside of the main entrance door. (T.T. p. 15).

Trooper Vinkler then located additional firearms in a locked gun case in a bedroom and a loaded 44 Caliber Ruger Pistol ("Ruger") underneath a pillow on the couch in the living room. (T.T. pp. 16-17, 36). After locating the firearms, Trooper Vinkler escorted Appellant outside the house towards his patrol vehicle where he

---

[2] Appellant testified that Trooper Vinkler just walked into her house but she did not tell him he could not come inside. (T.T. p. 34).

2

locked the Ruger in his trunk. (T.T. p. 24). With regards to the other firearms, Trooper Vinkler contacted a relative of Appellant to take possession and remove them from the house. (T.T. p. 24). Trooper Vinkler concluded his investigation by placing Appellant under arrest when he confirmed she was not permitted to possess a firearm.[3] (T.T. p. 25).

Appellant testified at trial. Appellant testified that she lived with her husband and son. (T.T. p. 34). She testified that she did not know any guns were in the gun cabinets and she did not know that the Ruger was under a pillow in the living room. (T.T. pp. 36-37). She later testified that the Ruger was her mother's firearm, who was at the residence earlier that day. (T.T. p. 37).

## DISCUSSION

Appellant's first concise issue is whether the trial court erred in denying her OPT in the form of a motion to suppress evidence. An Order denying Appellant's motion was entered on November 18, 2015 by another Judge of the Fayette County Court of Common Pleas. This Court will rely upon said ruling and no further opinion on this claim will be issued.

Appellant next contends that this Court erred in permitting the Commonwealth to introduce testimony regarding multiple firearms when the Commonwealth in its information only charged Appellant with being in possession of a singular firearm. The standard of review for an evidentiary issue is as follows:

---

[3] This Court read to the jury a stipulation agreed to by the parties that Appellant was prohibited from possessing or controlling a firearm due to a prior conviction and she was prohibited from possessing or controlling a firearm on a date more than sixty days from July 15, 2015. (T.T. p. 18).

3

> the admissibility of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon abuse of discretion. An abuse of discretion will not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Moreover, an erroneous ruling by a trial court on an evidentiary issue does not necessitate relief where the error was harmless beyond a reasonable doubt.

*Commonwealth v. Travaglia*, 611 Pa. 481, 28 A.3d 868, 873-74 (2011) (citations omitted). Appellant argued at trial that since the criminal information made reference to "a firearm" and since the Commonwealth only provided physical evidence of one firearm, the Ruger, then evidence presented by the Commonwealth referencing any other firearm was prejudicial to her. Appellant further argued that if the Commonwealth wanted to introduce evidence of multiple firearms, then the Commonwealth should have made a reference to multiple firearms in the information.

The purpose of a criminal information is to notify a defendant of the charge she has to meet. *Commonwealth v. McIntosh*, 476 A.2d 1316, 1321 (Pa. Super. 1984). Thus, the information prepared by the Commonwealth is legally valid if it contains "a plain and concise statement of the essential elements of the offense..." Pa. R.Crim.P. 560(B)(5).

Instantly, the information was sufficient enough to inform Appellant of the charge against her. Our Superior Court held that the Commonwealth's information against a defendant is not to be read in an overly technical manner. *McIntosh,*

4

*supra.* Appellant arguing narrowly that the Commonwealth should have been precluded from introducing evidence of multiple firearms simply because the Commonwealth phrased the information in an extremely similar manner as to the statutory text of the charged offense[4] is the very act of reading the information in an overly technical manner. In addition, the information did not identify a specific firearm. Had the information identified a specific firearm Appellant was prohibited from possessing or controlling and then introduced into evidence several other firearms, then Appellant's argument would make more sense.

Furthermore, Appellant was put on notice of the Commonwealth's intent to introduce evidence of multiple firearms based on Trooper Vinkler's testimony at Appellant's OPT hearing. Trooper Vinkler's testimony during the OPT hearing that multiple firearms were recovered from Appellant's residence, including the shotgun, the firearms in the gun case, and the Ruger, was entirely consistent with his

---

[4] The relevant portion of the statute states:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture *a firearm* in this Commonwealth.

18 Pa. C.S. § 6105(a)(1). (emphasis mine).

The information alleged that Appellant:

> "who was convicted of Aggravated Assault within or without this Commonwealth, regardless of the length of sentence or whoel [sic] conduct meeets [sic] the criteria in Subsection (c) is not permitted to possess, use, control, sell, transfer or manufacture *a firearm* in this Commonwealth.

Count 1, Information, 10/09/15. (emphasis mine).

5

testimony at Appellant's jury trial. Therefore, not only was Appellant aware of the Commonwealth's evidence, but Appellant also had approximately eight months to prepare a defense in regards to evidence of multiple firearms.[5]  Since the Commonwealth's information against Appellant was sufficient to meet the purpose of Rule 560, then permitting the Commonwealth to present evidence of multiple firearms was not an abuse of discretion. Accordingly, Appellant's issue is without merit.

BY THE COURT:

ATTEST:

_____
JOSEPH M. GEORGE, JR., JUDGE

CLERK OF COURTS

FILED

2016 OCT -4 AM 10: 12

JANICE SNYDER
FAYETTE COUNTY
CLERK OF COURTS

---

[5] Appellant's OPT hearing was held on November 17, 2015 and her jury trial was held on August 1, 2016.